**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>      Plaintiff,<br><br>vs.<br><br>Mauricio Solorzano-Cruz,<br><br>      Defendant. | CR 15-1853-TUC-JAS (JR)<br><br>**REPORT AND RECOMMENDATION** |

This matter was referred to Magistrate Judge Rateau for pretrial matters. On April 20, 2016, Defendant Mauricio Solorzano-Cruz ("Defendant") filed a Motion to Dismiss Indictment Pursuant to 8 U.S.C. 1326(d). (Doc. 33). The Government filed a Response on May 17, 2016. (Doc. 39). Defendant filed a reply on June 7, 2016. (Doc. 47). The Court held a hearing on June 14, 2016. Defendant was present and represented by counsel.[1] No witnesses testified at the hearing. Having considered the matter, the Magistrate Judge recommends that the motion be denied.

**I.   Factual Findings**

Defendant is a citizen of El Salvador who became a permanent resident of the United States in 1990. (Doc. 33-3, p. 1). On June 26, 1998, he was arrested and

---

[1] Because no testimony was presented, the Court did not request the preparation of a transcript of the hearing.

charged with robbery in Harris County, Texas. (Doc. 33-2, p. 1). The felony information read:

> [T]he Defendant, on or about June 26, 1998, did then and there unlawfully, while in the course of committing theft of property owned by [victim] and with intent to obtain and maintain control of the property, intentionally, knowingly and recklessly cause[d] bodily injury to [victim] by striking [victim] with a brick.

*Id*.

Defendant pled guilty to the offense on June 29, 1998 and was sentenced to two years confinement. (Doc. 33-2, p. 2). On March 17, 2003, he was noticed to appear before the immigration judge. (Doc. 33-1). The notice charged:

> On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provisions(s) of law: Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in section 101(a)(43)(F) of the Act.

*Id*.

Defendant appeared before an immigration judge for his removal proceeding and was advised by the judge as follows:

> So based upon your testimony alone, the Court finds Immigration Service has the right to deport from the United States because you have been convicted of an aggravated felony, a crime of violence.

(Doc. 33-3, p. 2). Defendant was ordered removed from the United States to El Salvador. (*Id*. at p. 4). When asked if he wished to appeal the decision, Defendant answered, "Yes, sir," and indicated that he believed that his life or freedom would be in danger if he were removed to El Salvador and wished to apply for withholding of

1  removal. (*Id*. at p. 2). However, after he was informed that he would be required to
2  return to court to pursue relief, Defendant indicated that he did not want to appeal the
3  removal order or seek withholding of removal. (*Id*. at pp. 3-4).
4        On September 26, 2015, Defendant was arrested near Santa Rosa, Arizona, on
5  immigration related charges. (Doc. 1). On October 21, 2015, he was charged by
6  indictment with Re-Entry After Deportation in violation of 8 U.S.C. § 1326, which
7  was enhanced by 8 U.S.C. § 1326(b)(2) based on his previous removal. (Doc. 6).
8  **II.**    **Legal Conclusions**
9      **A.**    **Defendant's Argument**
10       In the motion before the Court, Defendant requests the dismissal of the
11  indictment because "defects in the underlying removal proceedings violated his right
12  to due process, foreclosed judicial review, and resulted in prejudice." (Doc. 33, p. 1).
13  More specifically, he contends that his prior removal was invalid because the
14  underlying conviction for robbery did not qualify as an aggravated felony as charged
15  in the Notice to Appear, or as aggravated felony and crime of violence and as found
16  by the immigration judge. (Doc. 33, p. 4).
17      **B.**    **Standards for Collateral Attack on Removal Order**
18       "To convict an alien criminal defendant of illegal reentry under 8 U.S.C. §
19  1326, the government must prove that the alien left the United States under order of
20  exclusion deportation or removal, and then illegally reentered." *United States v.*
21  *Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014) (quoting *United States v.*
22  *Barajas-Alvarado*, 655 F.3d 1077, 1079 (9th Cir. 2011)). When facing such a charge,

a non-citizen has the right under the Fifth Amendment to "collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Alvarado-Pineda*, 774 F.3d at 1201 (quoting *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004). That right is codified at 8 U.S.C. § 1326(d), which requires a defendant to demonstrate that (1) he exhausted all administrative remedies available to him to appeal his removal order, (2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) the entry of the order was fundamentally unfair. *Ubaldo-Figueroa*, 364 F.3d at 1048; *see* 8 U.S.C. § 1326(d).

### 1. Exhaustion of Administrative Remedies

Defendant does not dispute that he failed to exhaust the administrative remedies available to him to challenge the underlying removal order. After the immigration judge found him deportable, Defendant was asked if he wanted to appeal the decision to a higher court. He was also asked if he wished to apply for withholding of removal. However, when the immigration judge set his case for further proceedings, Defendant, who is an English speaker, asked if he could "just get sent then do it . . . ." (Doc. 33-3, pp. 2-3). The judge then explained to him that he would have to apply for relief personally and then appear for a hearing. (*Id.*, p. 3). Defendant indicated he did not wish to apply for withholding of removal and wished to be deported. He was then asked by the judge if he wished to appeal the decision, to which he replied, "No, sir." Finally, the judge asked him if he was sure, and Defendant indicated that he was sure. (*Id.*).

An alien is barred from collaterally attacking the validity of an underlying deportation order "if he validly waived the right to appeal that order during the deportation proceedings." *United States v. Gonzalez*, 429 F.3d 1252, 1256 (9th Cir. 2005); *see also Untied States v. Galicia-Gonzalez*, 997 F.2d 602, 604 (9th Cir. 1993) (to establish invalidity of waiver, a defendant must show "that his rights were improperly explained or that he was coerced into waiving them").

Here, the Defendant argues that his waiver of his right to appeal the order is excused by the fact that the immigration judge informed him that no relief was available and because he was not otherwise informed of a potential basis for relief. In support of his argument, Defendant relies on *United States v. Leon-Paz*, 340 F.3d 1003 (9th Cir. 2003). *Leon-Paz* involved an alien's collateral challenge to his removal order on the ground that the immigration judge failed to inform him of his "apparent eligibility" for discretionary relief under § 212(c). 340 F.3d at 1005.

Immigration regulations require immigration judges to inform aliens of "apparent eligibility" for relief. 8 C.F.R. § 1240.11(a)(2). However, "apparent eligibility" is present "where the record, fairly reviewed by an individual who is intimately familiar with the immigration laws—as immigration judges no doubt are—raises a reasonable possibility that the petitioner may be eligible for relief." *Moran-Enriquez v. INS*, 884 F.2d 420, 423 (9th Cir. 1989). Defendant here identifies no relief, discretionary or otherwise, for which he may have been eligible. The only issue before the immigration judge in Defendant's case was whether Defendant's conviction for robbery constituted an aggravated felony that would support his

5

removal. It would make little sense for the judge to find Defendant removable and then be obligated to inform him that he might be wrong. The very purpose of an appeal is to "correct legal error which occurred at the initial determination of deportability . . . ." *INS v. Rios-Pineda*, 471 U.S. 444, 450 (1985). Defendant does not, and reasonably cannot, contend that he was unaware that he could have appealed the immigration judge's decision in his case. By waiving his appeal, Defendant only forewent his opportunity to challenge the immigration judge's removal decision. Thus, unlike the situation in *Leon-Paz*, Defendant's election to forego the appeal was not based on the immigration judge's erroneous belief that Defendant was not entitled to some other form of relief from removal and he validly waived the right to appeal the removal order during the deportation proceedings. *U.S. v. Muro–Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001).

Despite this authority, some cases suggest that exhaustion of administrative remedies and deprivation of judicial review is excused when it is determined that the immigration judge's finding of an aggravated felony is later determined to have been incorrect. For example, in *United States v. Morales*, 634 Fed.Appx. 606 (9th Cir. 2016), the defendant's 1997 conviction for statutory rape was no longer considered an aggravated felony. *Id*. As such, the Ninth Circuit, relying on *United States v. Gonzalez-Villalobos*, 724 F.3d 1125 (9th Cir. 2013), concluded that the defendant's waiver of his appeal rights was not "considered and intelligent" because it was based on "incorrect information" from the immigration judge. Dissenting from this conclusion, Judge Callahan noted that the majority's decision was contrary to the

6

express provisions of 8 U.S.C. § 1326(d)(1) and (2) that disallow collateral attacks unless the defendant "exhausted his administrative remedies []or sought judicial review of the immigration judge's conclusion that he was a removable felon." 634 Fed.Appx. at 607. Judge Callahan would have held that the defendant, who had been advised of his appeal rights and had waived them, was barred from mounting a collateral attack to the immigration judge's conclusion that he was an aggravated felon. *Id.*

Although this Court disagrees with *Morales*, and agrees with Judge Callahan's reasoning in dissent, it will nevertheless assume that the Defendant's waiver of his appeal rights was not "considered and intelligent," and continue with the analysis of the remaining requirements of section 1326.

### 2. Deprivation of Judicial Review

Defendant must also show that the underlying removal proceedings at which the removal order was issued improperly deprived him of the opportunity for judicial review. *Ubaldo-Figueroa*, 364 F.3d at 1048; *see* 8 U.S.C. § 1326(d)(2). His argument on this point also relies on *Leon-Paz*. Specifically, he contends that "the immigration judge's incorrect advice led to the deprivation of judicial review." *Reply*, p. 2. However, Defendant does not identify what "incorrect advice" the judge offered him. The judge found that Defendant's prior conviction for robbery constituted "an aggravated felony, a crime of violence," and ordered Defendant removed. (Doc. 33-3, p. 2). The judge then offered Defendant the opportunity to

7

1 appeal the decision and Defendant ultimately declined. Thus, he was not deprived of
2 any opportunity to appeal, but merely decided to forego the opportunity.

3   While this conclusion is supported by a natural reading of the underlying
4 statutory requirements, in *United States v. Gonzalez-Lopez*, 724 F.3d 1125 (9th Cir.
5 2013), the Ninth Circuit stated that:

> Although 8 U.S.C. § 1326(d)(1) and (d)(2) are separate requirements, we have generally held that where an alien is deprived of his right to appeal to the BIA, he satisfies both (d)(1) and (d)(2). This makes sense, because an alien who fails to exhaust his administrative remedies due to an error in the underlying proceedings, satisfying (d)(1), will typically also be deprived of the opportunity for judicial review, satisfying (d)(2).

*Id*. at 1130. As an example of such a situation, the court referred to *United States v. Pallares-Galan*, 359 F.3d 1088 (9th Cri. 2004). In that case, Pallares-Galan, who was charged with illegal reentry under 8 U.S.C. § 1326, successfully mounted a collateral attack on the underlying removal order, arguing that immigration judge erred in finding that his California misdemeanor conviction for Annoying or Molesting a Child Under 18, in violation of Cal. Pen. Code § 647.6(a), constituted an aggravated felony conviction under 8 U.S.C. § 1101(a)(43)(A) of the immigration laws. *Id*. at 1091. There, as Defendant did here, Pallares-Galan waived his right to appeal the immigration judge's determination due to the length of time the appeal required. *Id*. at 1093. On appeal, the Ninth Circuit found that Pallares-Galan's waiver was not "considered and intelligent" because the immigration judge erred in her determination that Pallares-Galan's previous conviction constituted an aggravated felony. *Id*. at 1096. The court also found it significant that Pallares-Galan was

1 unrepresented by counsel and not adequately advised of the consequences of the
2 choice he was forced to make. *Id*. at 1097. Thus, the court excused Pallares-Galan
3 of satisfying § 1326(d)(1)'s exhaustion requirement, and for the same reasons found
4 that he had been deprived of the § 1326(d)(2) opportunity for judicial review. Thus,
5 the Court must examine the underlying decision by the immigration judge to
6 determine if it was made in error.

### 3. Fundamental Unfairness

The Government contends that even if Defendant is excused from the exhaustion and judicial review requirements, he is nevertheless not entitled to relief because the immigration judge correctly characterized Defendant's Texas robbery conviction under Tex. Penal Code § 29.02(a) as an aggravated felony, either as a crime of violence under 8 U.S.C. § 1101(a)(43)(F), or as a theft offense under 8 U.S.C. § 1101(a)(43)(G), and, as such, properly determined that Defendant was ineligible for any relief from removal.

A defendant collaterally attacking an order of removal is obligated to demonstrate that the entry of the order was fundamentally unfair. *Ubaldo-Figueroa*, 364 F.3d at 1048; *see* 8 U.S.C. § 1326(d). An underlying order of removal is "fundamentally unfair" if (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. *Alvarado-Pineda*, 774 F.3d at 1201. However, even if there were procedural defects in the removal proceeding, a defendant's collateral attack

1 "must necessarily fail" if he was convicted of an aggravated felony. *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1202 (9th Cir. 2014).

Here, Defendant contends that the conviction upon which his removal rested did not qualify as an aggravated felony for which he could be properly removed. To determine whether his state conviction qualifies under the federal definition of an aggravated felony, courts employ the approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *See Rendon v. Holder*, 764 F.3d 1077, 1082 (9th Cir. 2014). "That approach—deemed the "categorical approach"—requires that courts look only to the statutory definitions—*i.e.*, the elements—of a defendant's prior offenses, and not 'to the particular facts underlying those convictions' when making a comparison between a prior conviction and a federal generic crime." *Id*. at 1082-83 (internal quotations and citations omitted). "The prior conviction qualifies as [the generic offense] only if the statute's elements are the same as, or narrower than, those of the generic offense." *Alvarado-Pineda*, 774 F.3d at 1202. However, a state statute will qualify as a generic offense only if "the 'full range of conduct covered by [the state statute] falls within the meaning'" of the generic offense. *Id*. (citing *Mandujano–Real v. Mukasey*, 526 F.3d 585, 589 (9th Cir. 2008); *Martinez–Perez v. Gonzales*, 417 F.3d 1022, 1026 (9th Cir. 2005)).

The Texas statute pursuant to which Defendant was convicted provided (and still provides) that a person commits robbery:

> if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

Tex. Penal Code § 29.02(a).

A conviction for robbery under this statute is not categorically an aggravated felony "crime of violence" because it does not have "as an element the use, or threatened use of physical force against the person or property of the another," as required under 18 U.S.C. § 16(a), and because it does not meet the definition of a "crime of violence" found in 18 U.S.C. § 16(b). As the Ninth Circuit explained in *United States v. Palacios-Gomez*, -- Fed.Appx. --, 2016WL1105296 (9th Cir. 2016), this is because the statute allows for the possibility of "recklessly caus[ing] bodily injury to another." Because the crime can be committed with a *mens rea* of recklessness, it is not categorically included in the definition of a crime of violence. *See Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006).

The Government attempts to sidestep the ruling in *Palacios-Gomez*, arguing that the conviction is a crime of violence under the modified categorical approach. "For the limited purpose of helping to implement the categorical approach, the [United States Supreme] Court has recognized a 'narrow range of cases' in which courts may apply the 'modified categorical approach.'" *Rendon*, 764 F.3d at 1083 (quoting *Taylor*, 495 U.S. at 602). The modified categorical approach "allows courts to look beyond the statutory test to a limited set of documents to determine the elements of the state offense of which the defendant was convicted when some

alternative elements of the state crime would match the federal, generic crime, and other alternative elements would not. *Rendon*, 764 F.3d at 1083. However, the Supreme Court has limited the use of the modified categorical approach to situations where the state statute is divisible, that is where it "lists multiple, alternative elements, and so effectively creates several different . . . crimes." *Descamps v. United States*, 133 S.Ct 2276, 2283 (2013).

Here, the Government has convincingly established that the Texas statute at issue is divisible. In relevant part, the statute provides that robbery can be committed by "intentionally, knowingly, or recklessly" causing bodily injury to another. Tex. Penal Code § 29.02(a)(1). Due to the disjunctive phrasing of three levels of *mens rea* required for a conviction, the statute effectively creates several different crimes and is therefore divisible. *United States v. Palacios*, -- Fed.Apx. --, 2016WL1105296 (9th Cir. 2016) (finding Tex. Penal Code § 29.02(a)(1) divisible). Thus, the Court may employ the modified categorical approach and review noticeable documents related to Defendant's Texas conviction even if they were not introduced at his removal hearing. *See Untied States v. Bustos-Ochoa*, 704 F.3d 1053, 2056-57 (9th Cir. 2012).

The only document offered by the Government in this case is the Defendant's Texas information. It alleges that Defendant "intentionally, knowingly and recklessly cause[d] bodily injury to [victim] by striking [victim] with a brick." (Doc. 33-2, p. 1). The Court notes that, on its face, the information offers no insight into whether the acts alleged were done intentionally, knowingly or recklessly. Nevertheless, the Government seizes on the "striking" allegation and argues that it

12

shows the Defendant acted intentionally or knowingly and thus rules out the possibility that he acted recklessly under the statute. In support of its position, the Government offers that the "Oxford Dictionary definition of 'strike' is to 'hit forcibly and deliberately with one's hand or weapon or other implement." *Response*, p. 4. The word "deliberately," in turn, is defined as "consciously and intentionally; on purpose." *Id*. Thus, the Government contends, the use of the word "strike" in the information establishes that Defendant's acts were intentional.

What the Government overlooks, however, is that the same dictionary offers other definitions that encompass non-intentional strikes. For example, a strike can be an "accidental hit (a part of one's body) against something," or to "come into forcible contact or collision with." These latter definitions suggest that a strike can be recklessly accomplished. It is entirely possible that Defendant threw a brick through a window, intending to create access into a structure, only to have it hit the victim. Thus, without additional information about the facts of the underlying conviction, the Court cannot conclude that the conviction constituted an aggravated felony under the modified categorical approach.

However, this conclusion does not end the categorical inquiry. If, as the Government argues, the Texas robbery conviction categorically constitutes a "theft offense," it is considered an aggravated felony under 8 U.S.C. § 1101(a)(43)(G) and provides a proper basis for Defendant's removal. The Ninth Circuit, in *United States v. Alvarado-Pineda*, 774 F.3d 1198 (9th Cir. 2014), undertook a similar evaluation of the Washington robbery statute. There, the court first defined "generic theft":

13

> Under the Immigration and Nationality Act, a statute may qualify as an aggravated felony if it is a "theft offense." 8 U.S.C. § 1101(a)(43)(G). We have defined generic "theft" as "a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of the rights and benefits of ownership." *United States v. Corona–Sanchez*, 291 F.3d 1201, 1205 (9th Cir. 2002) (en banc) (quoting *Hernandez–Mancilla v. INS*, 246 F.3d 1002, 1009 (7th Cir. 2001)). Generic theft, in other words, requires (1) the taking of (2) property (3) without consent (4) with the intent "to deprive the owner of rights and benefits of ownership." *See id.*; *see also Mandujano–Real v. Mukasey*, 526 F.3d 585, 589–90 (9th Cir.2008).

774 F.3d at 1202. With this definition in mind, the court then compared the elements of the Washington robbery statute with those of generic theft and concluded that "the 'full range of conduct' criminalized by [the] Washington second-degree robbery [statute] falls within the meaning of generic theft in that both require (1) the taking of (2) personal property (3) without consent and (4) with the specific intent to steal." *Id*. at 1202-03.

Turning to our case, the question is whether the Texas robbery statute, like the Washington robbery statute, falls within the definition of generic theft. As a threshold matter, the robbery statute pursuant to which Defendant was convicted, Tex. Penal Code § 29.02, expressly incorporates the elements of the Texas theft statute, Tex. Penal Code § 31.03.[2] *See* Tex. Penal Code § 29.02(a) (providing that a

---

[2] In relevant part, the Texas theft statute provides:

> (a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.
>
> (b) Appropriation of property is unlawful if:

14

robbery is committed if, "in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property . . . ."). As such, if the elements of the Texas robbery statute, considered with the incorporated elements of the Texas theft statute, are found to correspond to the definition of generic theft, Defendant's removal order cannot be found to be fundamentally unfair.

Again, the generic definition of theft requires (1) the taking of (2) personal property (3) without consent and (4) with the specific intent to steal. Elements 1, 2 and 4 of the generic definition are satisfied by the theft statute's requirements of appropriation of property "with intent to deprive the owner of the property," Tex. Penal Code § 31.03(a), and the robbery statute's requirement that the state prove "intent to obtain or maintain control of the property." Tex. Penal Code § 29.02(a).

The only potential confusion arises from the theft statute's requirement that the appropriation be without the owner's "effective consent," Tex. Penal Code §

---

> (1) it is without the owner's effective consent;
>
> (2) the property is stolen and the actor appropriates the property knowing it was stolen by another; or
>
> (3) property in the custody of any law enforcement agency was explicitly represented by any law enforcement agent to the actor as being stolen and the actor appropriates the property believing it was stolen by another.

Tex. Penal Code § 31.03.

31.03(b)(1), and whether that comports with the generic theft element of "without consent." This discrepancy was addressed by the Fifth Circuit in *United States v. Rodriguez-Salazar*, 768 F.3d 437 (5th Cir. 2014). There, the Fifth Circuit explained:

> Our task is to determine whether the Texas [theft] offense is comparable to and categorically fits within the generic federal definition of the corresponding crime of theft. We must ask if the state would apply its statute to conduct that falls outside the generic definition of theft. *Moncrieffe v. Holder,* ⎯⎯ U.S. ⎯⎯, 133 S.Ct. 1678, 1684–85, 185 L.Ed.2d 727 (2013).
>
> Clearly the definition of theft we have followed does not limit the crime to consent withheld when a guilty person takes possession of the property from the owner. The withholding of consent is expressly extended to the time the thief or embezzler exercises control of the property. The owner's consent is comparable whether measured before or after the moment the property is transferred. We see no justification to carry that narrow distinction to change the generic theft crime.

*Rodriguez-Salazar*, 768 F.3d at 438. Thus, the Fifth Circuit concluded that a conviction under the Texas Penal Code § 31.03 fell within the generic definition of theft and therefore qualified as an aggravated felony under 8 U.S.C. § 1101(a)(43)(G).

The Court sees no reason to reject the Fifth Circuit's conclusion that the Texas theft statute, which is incorporated into the Texas robbery statute under which Defendant was convicted, is a categorical theft offense under 8 U.S.C. § 1101(a)(43), and therefore finds that the elements of Defendant's conviction satisfied the elements of generic theft. It is also undisputed that Defendant was sentenced to more than one year in prison for the Texas robbery conviction. Thus, the conviction qualifies as an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G), and Defendant did not suffer

16

any prejudice from any defects in his removal proceedings and the entry of the removal order was not fundamentally unfair. *Ubaldo-Figueroa*, 364 F.3d at 1048; *see* 8 U.S.C. § 1326(d).

Additionally, even though this is a different ground than the one previously relied on by the government, it nevertheless can be relied upon in upholding the removal order. *See Alvarado-Pineda*, 774 F.3d at 1202 (noting that the district court had upheld the defendant's removal by concluding that second degree robbery was an aggravated felony crime of violence, but affirming on the ground that the conviction under the statute "is a conviction of a 'theft offense'").

### III. Recommendation

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and Local Rule Civil 72.1, Rules of Practice of the United States District Court, District of Arizona, the Magistrate Judge **recommends** that the District Court, after an independent review of the record, **DENY** Defendant's Motion to Dismiss Indictment Pursuant to 8 U.S.C. 1326(d). (Doc. 33).

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. However, the parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. See 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have ten (10) days

1 within which to file a response to the objections. No replies are permitted without
2 leave of court. If any objections are filed, this action should be designated case
3 number: **CR 15-1853-TUC-JAS**. Failure to timely file objections to any factual or
4 legal determination of the Magistrate Judge may be considered a waiver of a party's
5 right to de novo consideration of the issues. *See United States v. Reyna-Tapia*, 328
6 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

      Dated this 23rd day of June, 2016.

                                      Honorable Jacqueline M. Rateau
                                      United States Magistrate Judge